In re Randolph C. BUGNA, Debtor.

Edward E. McARTHUR, Plaintiff,

v.

Randolph C. BUGNA, Defendant.

Bankruptcy No. SA 88–05421 JR.
Adv. No. SA 89–0626 JR.

United States Bankruptcy Court,
C.D. California.

Jan. 31, 1992.

786

James W. Lundquist, Orange, Cal., Jeffrey I. Golden, Buchalter, Nemer, Fields & Younger, P.O. Newport Beach, Cal., for plaintiff.

LaVerne J. Bugna, Newport Beach, Cal., for defendant.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Plaintiff, Edward E. McArthur, initiated this adversary proceeding to have this court find that the state court judgment he obtained against debtor for $90,000 damages and $300,000 "punitive" damages is nondischargeable under § 523(a)(4) of the Bankruptcy Code. Plaintiff brings this summary judgment motion ("Motion") contending that there are no material issues of fact in controversy based on the state court proceedings and the preclusive effect of the doctrine of collateral estoppel. After holding a hearing on the Motion on September 3, 1991, I took the matter under submission and gave the parties additional time to file supplemental pleadings regarding the application of the doctrine of collateral estoppel to the Motion.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF FACTS

In the state court proceeding, plaintiff sued debtor for fraud and breach of contract. A jury determined the issue of liability on the breach of contract claim, finding that debtor had contractually agreed on April 16, 1979 to transfer to plaintiff a 14.4% interest in a California partnership called Lakeview, Ltd. and that debtor had taken and withheld the partnership interest for his benefit, thereby causing damages to plaintiff. The jury also found against debtor on the issue of fraud and determined that the award of damages should include punitive damages. These findings were set forth in a "Verdict on Liability" and "Verdict on Fraud", respectively.

In finding debtor liable, the jury answered certain interrogatories. The jury answered "yes" to (1) whether the debtor promised to sell plaintiff a 14.4% interest in the partnership; (2) whether the agreement was reduced to writing; (3) whether the agreement was oral; (4) whether the agreement was entered into on or before April

16, 1979; (5) whether in his capacity as a real estate broker, debtor breached a fiduciary duty to plaintiff; (6) whether in his capacity as a partner, debtor breached a fiduciary duty to plaintiff; (7) whether the breach of fiduciary occurred prior to April 16, 1979; and (8) whether the breach of fiduciary duty related to a matter other than plaintiff's claim to invest an additional $90,000 in the partnership.

By stipulation of the parties, the issues relating to damages were left to the judge. The state judge issued a "Statement of Decision". In his decision, the judge acknowledged that the jury had returned a verdict in favor of plaintiff on claims of contract and breach of fiduciary duty and that the jury had recommended the imposition of punitive damages. Oral and documentary evidence were introduced on behalf of the parties. The court made the following findings: (1) Plaintiff was a limited partner in Lakeview, Ltd.; (2) debtor was a general and limited partner in Lakeview; (3) at all relevant times debtor was a California real estate broker with prior experience in organizing real estate partnerships; (4) debtor and a third party, Chase, began syndicating the Cedarcrest Group in the latter part of 1978 to purchase and operate an apartment complex in Provo, Utah; (5) while employed by debtor, Chase prepared a partnership agreement describing the investment in the Cedarcrest Apartments; (6) debtor reviewed the partnership agreement and approved it; (7) Chase with debtor's knowledge and approval solicited plaintiff's investments in the partnership; (8) plaintiff invested $140,000 in the partnership and on April 16, 1979 invested an additional $90,000 for an extra 14.4% interest in the partnership; (9) debtor returned plaintiff's check uncashed, claiming technical problems and assuring plaintiff that he would get his 14.4% interest at a later date; (10) debtor continued giving this assurance to plaintiff until August, 1979, when, for the first time, he told plaintiff that he was keeping the 14.4% interest for himself; and (11) with the 14.4% interest debtor became the majority and controlling partner in the partnership.

Based on the evidence, the state judge held that debtor breached his fiduciary duties to plaintiff in his capacities as a real estate broker and as a general partner of the partnership by, prior to and after April 16, 1979, concealing certain material facts, including debtor's intent to acquire a remaining partnership interest for the purposes, in part, of controlling the partnership for his personal gain and benefit. This included, but was not limited to, debtor's falsely telling plaintiff that plaintiff would receive the 14.4% partnership interest at a later date in exchange for the $90,000. Debtor's course of conduct and breaches of fiduciary duty continued until August, 1979.

In deciding the amount of damages, the state judge acknowledged that fraud requires compensation equal to the benefit of the bargain, which he held to mean at least the value of the personal property interest in the partnership. The court determined that this value was no less than $180,000 on September 1, 1979. Subtracting the acquisition price of $90,000, the court awarded $90,000 in compensatory damages.

Turning to the request for pre-judgment interest compounded, the court decided that such interest was appropriate. The court reasoned that the jury had found that debtor had defrauded plaintiff in repudiating the $90,000 subscription agreement and in acquiring the majority interest in the partnership to plaintiff's detriment while acting as a general partner and real estate broker. Compound interest is properly allowed on a claim of fraud against a real estate broker.

The court then addressed the punitive damages issue. In deciding to award punitive damages of $300,000, the court found that debtor had a dual fiduciary duty to plaintiff. The jury found that debtor had breached his duties as both a broker and partner. In breaching those duties, debtor deprived plaintiff of his partnership interest, obtained an advantage over plaintiff and gained control of the partnership. The court affirmed that California Civil Code § 3294 authorizes punitive damages when fraud is found. Based on public policy

grounds and on the egregious conduct and the unrepentant attitude of debtor, the court awarded punitive damages.

Debtor appealed. The appellate court upheld the trial court's awards of damages, including the amount of punitive damages, stating:

> Based upon the facts recited above, Bugna's conduct was easily reprehensible enough to justify the award. He intentionally violated numerous fiduciary duties of a broker or partner. Bugna attacks sufficiency [sic] of a number of public policy violations relied upon by the court. That analysis misses the mark. It is Bugna's conduct *taken as a whole* which must be scrutinized. That conduct—including intentional fraud—justified the magnitude of the award. (*Zhadan v. Downtown L. A. Motors,* (1976) 66 Cal.App. 3d 481, 497, 136 Cal.Rptr. 132.)

*McArthur v. Bugna,* No. G005605 (Super.Ct. No. 359392), slip op. at 16 (Cal.Ct. App. Oct. 19, 1989).

### DISCUSSION

Section 523(a)(4) provides: "(a) A discharge ... does not discharge an individual debtor from any debt ... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny...." To establish that the judgment here should be found nondischargeable, plaintiff must prove that the judgment resulted from a fraud committed by debtor while he was acting in a fiduciary capacity.

Plaintiff says that the record before me, in the form of the two verdicts of the jury, the jury's answers to interrogatories, the judge's Statement of Decision and the appellate court opinion, is sufficient to establish the necessary elements of a § 523(a)(4) cause of action under the doctrine of collateral estoppel.

Until recently, the doctrine of collateral estoppel had limited use in dischargeability actions involving fraud under § 523(a)(2), (4), and (6) because the standards of proof in bankruptcy and the state courts were held to be different. In reviewing the evidence in fraud dischargeability actions, the bankruptcy courts applied the clear and convincing standard. On the other hand, most state courts applied the lesser preponderance of the evidence standard. This impediment to the use of collateral estoppel in dischargeability actions was recently removed when the U.S. Supreme Court in *Grogan v. Garner,* 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), held that the standard of proof for purposes of dischargeability actions was preponderance of the evidence. *Id.* at ——, 111 S.Ct. at 661, 112 L.Ed.2d at 767.

The Court noted that "In sum, if nondischargeability must be proved only by a preponderance of the evidence, all creditors who have secured fraud judgments, the elements of which are the same as those of the fraud discharge exception, will be exempt from discharge under collateral estoppel principles." *Id.* at ——, 111 S.Ct. at 658, 112 L.Ed.2d at 764. The court acknowledged that almost every court of appeals had concluded that collateral estoppel is applicable in discharge exception proceedings. With this in mind, the Court stated in a footnote, "We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Id.* at ——, 111 S.Ct. at 658 n. 11, 112 L.Ed.2d at 763 n. 11.

It seems clear from a reading of *Grogan* that the Supreme Court supports the use of collateral estoppel when there is a final state judgment that constitutes the claim alleged to be nondischargeable in bankruptcy. It is axiomatic that the bankruptcy judge has the exclusive jurisdiction to decide whether the debt is nondischargeable. Generally, bankruptcy courts recognize the basic principles of *res judicata.* However, the Supreme Court in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), and the Ninth Circuit in *Houtman v. Mann (In re Houtman),* 568 F.2d 651 (9th Cir.1978), created an exception to this general principle for dischargeability actions. In *Brown,* the Supreme Court refused to allow the principle of *res judicata* to bar the bankruptcy court from looking beyond the state court judgment to determine whether the debt came within

one of the exceptions to discharge. *Brown*, 442 U.S. at 134, 99 S.Ct. at 2211. Prior to *Brown*, the Ninth Circuit determined that the exclusive jurisdiction of the bankruptcy judge precluded the bankruptcy judge from relying exclusively on prior state court proceedings when determining dischargeability. *Houtman*, 568 F.2d at 653–654. According to the Ninth Circuit in *Comer v. Comer (In re Comer)*, 723 F.2d 737 (9th Cir.1984),

> The main concern of both the Supreme Court in *Brown* and of this court in *Houtman* was to preserve the exclusive jurisdiction of the bankruptcy court to determine dischargeability. *Res judicata* should not be applied to bar a claim by a party in bankruptcy proceedings, nor should a bankruptcy judge rely solely on state court judgments when determining the nature of a debt for purposes of dischargeability, if doing so would prohibit the bankruptcy court from exercising its exclusive jurisdiction to determine dischargeability.

*Id.* at 740.[1]

■ *Res judicata*, therefore, does not apply in the dischargeability context in bankruptcy. Rather, the bankruptcy court is required to make an independent decision on whether the debt is nondischargeable. In *Houtman*, the Ninth Circuit stated that the technical doctrine of collateral estoppel does not apply to dischargeability actions. 568 F.2d at 653–54. But, the Supreme court in *Grogan* has now established the appropriateness of such use.

The issue then is how best to apply the doctrine of collateral estoppel in a dischargeability action. In *Frank v. Daley (In re Daley)*, 776 F.2d 834 (9th Cir.1985), the court said that even if the doctrine of collateral estoppel were appropriate, its use in that proceeding was inappropriate because the documents before the bankruptcy court were inadequate to permit it to form an independent judgment regarding dischargeability. *Id.* at 839.

In *Tilbury v. Walden (In re Tilbury)*, 74 B.R. 73 (9th Cir. BAP 1987), the court upheld the granting of summary judgment to a creditor on a dischargeability action based on the bankruptcy court's review of the state court documents. The bankruptcy court took judicial notice of the detailed findings of fact, conclusions of law and judgments entered by the state court and concluded that they were sufficient to establish clear and convincing proof of a nondischargeable intentional tort under § 523(a)(6). The BAP was satisfied that the same burden of proof was applied to the factual issues decided in the state court as was applied in the bankruptcy court. In relying exclusively on the factual findings, conclusions of law and judgment of the state court, the bankruptcy court had, in effect, applied the doctrine of collateral estoppel. *Id.* at 77–78. The BAP admitted that the applicability of the doctrine was directly before it. *Id.* at 78.

The BAP reviewed the *Daley* decision and noted that the Ninth Circuit had not categorically dismissed the use of collateral estoppel. The *Daley* court, however, reversed the grant of summary judgment because the documents before the bankruptcy court did not permit it to form an independent judgment regarding dischargeability. On the other hand, in reviewing the documents before the bankruptcy court, the BAP held that these were sufficient to permit the bankruptcy court to form an independent judgment regarding dischargeability. *Id.* at 79.

■ Accordingly, I must determine if the documents before me are sufficient for me to make an independent determination that plaintiff's state court judgment should be found nondischargeable under § 523(a)(4). For collateral estoppel to apply, (1) the issue of fact or law must actually have been litigated and determined by a valid and final judgment, (2) the determination must be essential to the judgment, (3) the party against whom estoppel is asserted must have been a party to the judgment and (4) the issue to be precluded must be identical to the issue decided in the prior

---

**1.** The *Comer* court upheld the use of *res judicata* as to the amount of a default judgment in state court since this went to the extent of the obligation and not the nature of the debt. *Id.*

action. *Punton v. Chapman (In re Chapman)*, 125 B.R. 284 (Bankr.S.D.Cal.1991).

■ Addressing each of these elements in order, the state court judgment is final. The issues of the existence of a fiduciary relationship between the parties and intentional or actual fraud were before the jury and the trial judge in the state court. The jury rendered a verdict of fraud and recommended punitive damages. Debtor says that the court cannot tell whether the jury found actual or constructive fraud from the verdict. This might be true, except that the jury recommended punitive damages which apply only if the fraud is intentional. In addition, the trial judge in determining damages held that the jury had found actual fraud. Independently, he also found that debtor had committed actual fraud in breaching his fiduciary duties to plaintiff. Furthermore, the trial judge agreed with the jury's recommendation and awarded punitive damages based on his own and on the jury's findings of actual fraud. Second, the jury's determination that debtor was a fiduciary of plaintiff and the partnership was essential to its judgment that debtor breached its fiduciary duties to plaintiff. Since plaintiff had pled actual fraud, the jury's finding of fraud was essential to its verdict against plaintiff for fraud. Additionally, it was essential for the trial judge to make a similar finding in awarding punitive damages. Third, debtor was a necessary party to the state court proceeding so that issue preclusion against him in this adversary proceeding, assuming the other requirements for collateral estoppel are satisfied, is appropriate. Lastly, the issues decided in the state court are the very same issues that this court must decide. To establish his cause of action, plaintiff must prove that debtor was a fiduciary and while acting as a fiduciary, debtor committed fraud against plaintiff. As previously stated, the jury and the state judge determined that debtor committed fraud while acting in a fiduciary capacity to plaintiff.

■ Debtor argues that the jury's finding that debtor was a fiduciary was insufficient to establish a fiduciary capacity

for purposes of § 523(a)(4). I understand that the fiduciary relationship that plaintiff must show for § 523(a)(4) is special. *Lewis v. Short (In re Short)*, 818 F.2d 693 (9th Cir.1987). However, plaintiff has met that burden because the Ninth Circuit has held that the fiduciary relationship between California partners satisfies the special requirements of § 523(a)(4). *Ragsdale v. Haller (In re Haller)*, 780 F.2d 794, 796–797 (9th Cir.1986). Additionally, the BAP has also held that the fiduciary relationship between a real estate broker and his client meets the standards of § 523(a)(4). *Woosley v. Edwards (In re Woosley)*, 117 B.R. 524 (9th Cir. BAP 1990). In offering the partnership interest to plaintiff, debtor might arguably take the position that this activity was outside the responsibilities of a real estate broker so no fiduciary relationship existed between him and plaintiff. Debtor cannot hide behind this technical argument. As a licensed California real estate broker, he had a fiduciary duty to plaintiff to make full disclosures relating to the transfer of the partnership interest. Accordingly, debtor has satisfied the fiduciary element of § 523(a)(4).

■ The second critical element under § 523(a)(4) is an act of fraud while acting in a fiduciary capacity. It is clear from the answers the jury gave to the interrogatories, the jury's verdicts and the trial judge's findings and judgment for damages that debtor committed actual fraud while breaching his fiduciary duties to plaintiff as a partner in the partnership and real estate agent connected with an offer of a partnership interest to plaintiff.

■ Debtor next argues that the court cannot determine from the jury's verdict of fraud or its answers to interrogatories whether the jury found constructive or actual fraud. A simple reading of the verdict might lead one to that conclusion. However, taking into consideration all the documents produced for my review, it is clear that the jury found actual fraud. This determination is verified by the state judge in his Statement of Decision and by the appellate court in its opinion upholding the state court's decision. In addition, the

state court made an independent finding of actual fraud in following the jury's recommendation that punitive damages were appropriate.

Debtor further argues that I should not give any weight to the findings of the state court or the opinion of the appellate court. In making this independent review of the record, I am not limited to just the record of the trial court proceedings before the jury. The trial judge held a trial to assess damages and was required to make findings to do that. In conducting this review, I see no basis for ignoring the findings of the state court judge. I also believe it is appropriate for me to consider the views of the state appellate court on the sufficiency of the evidence supporting the lower court's findings. Debtor has not cited me to any authority that would limit my review to just the trial record.

Lastly, debtor contends that the cases require that I review the whole record. In *Tilbury*, 74 B.R. 73 (9th Cir. BAP 1987), the BAP upheld the bankruptcy court's use of collateral estoppel in a summary judgment proceeding based on a review of detailed findings from the state court and without a review of the complete record. Here, I have the findings of the jury, detailed findings of the trial judge and an appellate decision upholding the findings of the jury and the trial judge. In my view, the record before me is sufficient to allow me to form an independent judgment regarding the dischargeability of plaintiff's claim.

Based on my review of the record of the state court proceedings as presented for my review, I hold that the doctrine of collateral estoppel applies and precludes the relitigation in this court of the state court's findings that debtor committed actual fraud while acting in a fiduciary capacity and as a result of that fraud, plaintiff was damaged. Since these findings satisfy the requirements for nondischargeability of a debt under § 523(a)(4), I grant the Motion and hold that plaintiff's claim for $90,000 in compensatory damages and $300,000 in punitive damages is nondischargeable.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.